# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEREMIAH DAVILA-LYNCH on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : Case No. : |
| v. | : : : |
| HOSOPO CORPORATION D/B/A HORIZON SOLAR POWER and JOHN DOE CORPORATION | : : : : |
| Defendants. | : : / |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Jeremiah Davila-Lynch ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. HOSOPO Corporation d/b/a Horizon Solar Power ("Horizon Solar") initiated pre-recorded telemarketing calls to a cellular telephone number of Plaintiff. Horizon Solar also hired John Doe Corporation to originate new customers, and that company initiated a pre-recorded telemarketing calls to a cellular telephone number of Plaintiff, as well as the cellular telephone of other putative class members for the purposes of advertising Horizon Solar goods and services, using an automated dialing system, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers

*en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Jeremiah Davila-Lynch is a resident of Norfolk County, Massachusetts.

6. Defendant HOSOPO Corporation d/b/a Horizon Solar Power is a Delaware corporation that has its principal office in Temecula, CA and a registered agent of Capitol Services, Inc., 1225 8th St., Suite 500, Sacramento, CA 95814. Horizon Solar conducts business in this District, including directing the third parties it hires to originate clients to solicit customers in this District.

7. Upon information and belief, John Doe Corporation is a legal entity hired by Horizon Solar to originate new business through pre-recorded telemarketing calls to cellular telephones. Its name and address are unknown at this time.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district as the telemarketing calls that gave rise to the Plaintiff's claims were made into this district, and the Plaintiff's cellular telephone, a substantial portion of the property at issue for these claims, are located in this district.

**The Telephone Consumer Protection Act**

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

15. Horizon Solar is a company that offers residential solar services.

16. To generate new clients, Horizon Solar relies on telemarketing.

17. In addition to doing its own telemarketing, some of Horizon Solar's telemarketing is conducted by third parties.

18. One of Horizon Solar's strategies for telemarketing involve making use of an automatic telephone dialing system ("ATDS") to solicit potential customers through the use of a predictive dialer, and hiring third parties that do the same.

19. Coupled with that technology, Horizon Solar also employs the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person, and hires third parties that do the same.

20. Horizon Solar engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but telemarketing representatives, who are often paid by the hour, only talk to individuals who pick up the telephone.

21. Through this method, Horizon Solar shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Plaintiff

22. Mr. Davila-Lynch is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

23. Mr. Davila-Lynch's cellular telephone number is (508) 930-XXXX.

24. On that number, Mr. Davila-Lynch received at least five pre-recorded message calls in November and December of 2017.

25. When the calls were answered, there was a lengthy pause and a click followed by silence, which also indicated to the Plaintiff that the call was made using an ATDS.

26. The pre-recorded message offered to save the call recipient money by using solar electricity.

27. When the Plaintiff finally connected with a live individual, he was informed that the calls were being made by "Solar Spectrum", and was informed that it was the same company as Horizon Solar.

28. In fact, "Solar Spectrum" and Horizon Solar merged in September of 2017. *See* https://www.prnewswire.com/news-releases/horizon-solar-power-and-solar-spectrum-announce-acquisition-of-brightcurrent-and-skyline-solar-300516119.html (Last visited January 15, 2018).

29. The calls came from a Caller ID number (978) 206-6188 and (774) 296-6386.

30. Return calls to those numbers lead to an answering machine that identifies Horizon Solar.

31. Unfortunately, Plaintiff's experience getting calls from the Defendants from those numbers is not unique:

these call have got to stop.  Why have a phone if the only calls you get are scam.  If someone calls with no message or name DO NOT CALL BACK OR ANSWER

Constantly got phone call from this number. No voicemail left.

*See* https://800notes.com/Phone.aspx/1-978-206-6188 (Last Visited January 12, 2018).

32. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

33. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

### Horizon Solar's Liability for the Telemarketing Calls

34. Horizon Solar is a "person," as defined by 47 U.S.C. § 153(39).

35. A number of the calls to the Plaintiff were believed to be made directly by Horizon Solar, as explained above.

36. The Plaintiff also believes that a third party may have made some of the calls at issue.

37. However, like the calls made by Horizon Solar themselves, they are also liable for calls made through third parties.

38. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

39. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Horizon Solar may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

43.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

44.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

7

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

45. Horizon Solar is legally responsible for ensuring that the company who made the calls complied with the TCPA, even if Horizon Solar did not itself make the calls.

46. Horizon Solar knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

47. In fact, Horizon Solar accepted the business from illegal calls from the defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

48. By hiring a company to make calls on its behalf, Horizon Solar "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

49. Moreover, Horizon Solar maintained interim control over the actions of the party that made the call.

50. For example, Horizon Solar had absolute control over whether, and under what circumstances, it would accept a customer.

51. Furthermore, Horizon Solar had day-to-day control over the party that made the call's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Horizon Solar.

52. Additionally, Horizon Solar restricted the geographic location that the company that made the calls could promote Horizon Solar.

53. Horizon Solar also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

54. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

55. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of classes of all other persons or entities similarly situated.

56. The classes of persons Plaintiff propose to represent is tentatively defined as:

TCPA CLASS

All persons within the United States: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

M.G.L. 93A CLASS

>All persons within the Commonwealth of Massachusetts to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

57. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

58. The classes as defined above are identifiable through phone records and phone number databases.

59. The potential classes number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

60. Plaintiff is a member of the classes.

61. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

   a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

   b. Whether Defendants placed calls using a pre-recorded message;

   c. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

   d. Whether the Plaintiff and the classes members are entitled to statutory damages because of Defendants' actions.

62. Plaintiff's claims are typical of the claims of class members. Plaintiff' claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

63. Plaintiff is an adequate representative of the classes because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and they are represented by counsel skilled and experienced in classes actions, including TCPA class actions.

64. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

65. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

66. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

67. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the classes' membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

68. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

70. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

72. The Defendants' violations were negligent and/or knowing.

## Count Two:
## Violation of M.G.L. 93A

73. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

74. At all relevant times the Defendants were engaged in commerce for purposes of M.G.L., c. 93A.

75. M.G.L., c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." M.G.L., c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

76. As alleged more fully herein, Defendants have violated c. 93A, § 2 by sending automated calls to Plaintiff and other Massachusetts putative class members. This conduct is unfair because it is harassing and annoying and invades the privacy of Plaintiff and the putative class members and because it causes them to incur costs for the calls.

77. Defendants conduct also violates the TCPA and as such, constitutes unfair and deceptive conduct in violation of c. 93A, § 2.

78. Pursuant to M.G.L., c. 93A, § 9, Plaintiff on behalf of themselves and the MGL C. 93A Class, seeks an order:

   a) Enjoining Defendants from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and
   b) Disgorging and restoring all monies that may have been acquired by Defendants as a result of such unfair and/or deceptive acts or practices.

79. The Plaintiff made a written demand for relief pursuant to Massachusetts General Laws chapter 93A section 9(3) and the Defendants have failed to make an adequate response,

thereby entitling the Plaintiff and the putative class to judgment on this Count and for all damages authorized by statute.

80. Based on the foregoing, Plaintiff and the other members of the Massachusetts Subclass are entitled to all remedies available under c. 93A, § 9, including, but not limited to, actual or statutory damages, whichever is greater, multiple damages, attorneys' fees and costs.

## Relief Sought

For himself and all class members, Plaintiff request the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys,

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net