# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM GONZALEZ and JEREMIAH DAVILA-LYNCH, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | Civil Action No. 18-10072-FDS |
| v. | |
| HOSOPO CORPORATION d/b/a HORIZON SOLAR POWER; TMI 4 U COMM LLC; DAVID GOODSTEIN; and FLOWMEDIA SOLUTIONS LLC, | |
| Defendants. | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

SAYLOR, J.

This is a putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs Jeremiah Davila-Lynch and William Gonzalez allege that they received telemarketing phone calls from defendants HOSOPO Corporation d/b/a Horizon Solar Power, Flowmedia Solutions LLC, and TMI 4 U COMM, LLC that violated the TCPA and Mass. Gen. Laws ch. 93A.[1]

Defendants Horizon Solar and Flowmedia have each moved to dismiss the complaint for failure to state a claim upon which relief can be granted. On January 30, 2019, Flowmedia filed a suggestion of bankruptcy, automatically staying the proceeding as to it. For the following reasons, the motion of defendant Horizon Solar will be denied.

---

[1] The second amended complaint also names David Goodstein, owner of Flowmedia and TMI, as a defendant.

I.  **Background**

   A.  **Factual Background**

William Gonzalez and Jeremiah Davila-Lynch are residents of Massachusetts whose cell phone numbers have a "508" area code. (Second Amended Compl. ¶ 6-7, 32, 48). HOSOPO Corporation, doing business as Horizon Solar Power, designs and installs residential solar-power systems. (*Id*. ¶ 8, 22). To generate new clients, Horizon Solar makes telemarketing calls and hires third parties, including Flowmedia Solutions LLC and TMI 4 U COMM LLC, to make telemarketing calls on its behalf. (*Id*. ¶ 23-24, 60).

In November and December 2017, Davila-Lynch received at least five calls from Solar Spectrum, a company he contends is the "same" as Horizon Solar. (*Id.* ¶ 33, 36).[2] Davila-Lynch alleges that the calls included "pre-recorded message[s]" offering to save him money by using solar-generated electricity. (*Id.* ¶ 34-35). Davila-Lynch also alleges that heard a "click and pause" sound upon answering each of those calls, a fact that he contends "indicate[s]" the calls were made using an "Automatic Telephone Dialing System" ("ATDS"). (*Id.* ¶ 34).

In January 2018, Gonzalez received an unidentified number of calls on his cell phone from TMI. (*Id.* ¶ 49). Gonzalez contends that those calls included "scripted telemarketing pitches" on behalf of Horizon Solar, and were made by a "ViciDial predictive dialer," a type of ATDS. (*Id.* ¶ 50-51).

Finally, during the end of January, and at times through February and March 2018, Gonzalez received at least eight telemarketing phone calls directly from Horizon Solar. (*Id.* ¶ 55). Gonzalez alleges that these calls were made with Five9, yet another type of ATDS. (*Id.* ¶ 56).

---

[2] Davila-Lynch alleges that Solar Spectrum and Horizon Solar merged in September 2017. (*Id*. ¶ 37).

B.  **Procedural Background**

On January 15, 2018, Davila-Lynch filed a complaint against Horizon Solar and "John Doe Corporation" on "behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the defendants."

On April 25, 2018, Davila-Lynch filed an amended complaint that added Flowmedia as a defendant.

On August 31, 2018, Davila-Lynch, now joined by Gonzalez, filed a second amended complaint.  The second amended complaint added TMI and David Goodstein as defendants and alleges two counts:  (1) a violation of the Telephone Consumer Protection Act; and (2) a violation of Mass. Gen. Laws ch. 93A.[3]

Defendants Horizon Solar and Flowmedia both moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.  On January 30, 2019, Flowmedia filed a suggestion of bankruptcy.

II. **Standard of Review**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a

---
[3] Count One is brought against all defendants, while Count Two is brought against only Horizon Solar and Flowmedia.

3

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. Analysis

### A. The Telephone Consumer Protection Act

Congress enacted the TCPA in 1991 after determining that "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance calls . . . from telemarketers." 47 U.S.C. § 227 note, Pub. L. No. 102-243, § 2(6)-(7). The TCPA makes it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service," "unless such call is made solely to collect a debt owed or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). "In short, the TCPA generally makes it unlawful to call a cell phone using" an ATDS. *ACA International v. Federal Communications Commission*, 885 F.3d 687, 693 (D.C. Cir. 2018).

Under the TCPA, an ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The dispute in this case centers on "[a] basic question raised by" that definition: "whether a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed" or whether "it [is] enough" that "the device can call from a database of telephone numbers generated elsewhere." *ACA Int'l*, 885 F.3d at 701. Essentially, Horizon Solar contends that an ATDS must *itself* have the ability to generate random or sequential

4

telephone numbers to be dialed, while Davila-Lynch contends that an ATDS need only be able to make calls from a stored list of telephone numbers generated elsewhere. Both sides have authority to support their contentions.

1. **FCC Rulings**

The TCPA gives the Federal Communications Commission the authority to "prescribe regulations to implement the requirements" of the TCPA. 47 U.S.C. § 227(b)(2). The FCC began issuing such rulings in 1992. *See In re Rules & Regulations Implementing the Telephone Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8753 (1992). For approximately ten years, the FCC rulings did not elaborate on the statute's definition of an ATDS. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045 (9th Cir. 2018).

In 2003, however, the FCC decided that "significant changes in the technologies and methods used to contact consumers" in the telemarketing industry "warrant[ed] modifications" to the existing rules. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003). In issuing its 2003 ruling, the FCC paid particular attention to the increasingly popular "predictive dialer," a type of "automated dialing system that uses a complex set of algorithms to dial consumers' telephone numbers automatically in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *Id.* at 14023, ¶ 8, n. 31. In examining predictive dialers, the FCC "made clear that, while some predictive dialers" could not "be programmed to generate random or sequential phone numbers," they still qualified as ATDSs under the statute. *ACA Int'l*, 885 F.3d at 702 (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14091 ¶ 131 n. 432, 14093 (2003)).

The FCC issued a new declaratory ruling in January 2008. *See In re Rules & Regulations*

5

*Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (2008). In that ruling, the FCC affirmed "that a predictive dialer constitutes an [ATDS] and is subject to the TCPA's restrictions on the use of autodialers." *Id.* at 566, ¶ 12. The FCC rejected the specific suggestion that "a predictive dialer meets the definition of" an ATDS "only when it randomly or sequentially generates telephone numbers" and "not when it dials numbers from customer telephone lists." *Id*.

The FCC re-affirmed its view in a declaratory ruling issued in 2012. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, 15392, ¶ 2, n. 5 (2008) ("The [FCC] has emphasized that" the definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.").

In 2015, the FCC issued another declaratory ruling that "purport[ed] to reaffirm" its 2003, 2008, and 2012 rulings. *ACA Int'l*, 885 F.3d at 701, citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015). Surprisingly, however, the ruling contained statements in which the FCC seemed to espouse both the view that a device can "qualify" as an ATDS "even if it lacks [the] capacity" to generate random or sequential numbers to be dialed and the "competing interpretation[]" that a device qualif[ies] as an ATDS only if it can generate random or sequential numbers to be dialed" itself. *ACA Int'l*, 885 F.3d at 702-03.

### 2. *ACA International*

Various entities regulated by the FCC sought review of its 2015 ruling in the Court of Appeals for the District of Columbia Circuit. *ACA International v. Federal Communications*

*Commission*, 885 F.3d 687 (D.C. Cir. 2018). Among other things, the entities sought review of "which sorts of automated dialing equipment [were] subject to the TCPA's restrictions." *Id.* at 691.

After a thorough review, the court was unable to find a "clear answer" as to what the 2015 ruling considered to be an ATDS. *Id.* at 702-03. Indeed, the court wrote, the FCC's "competing interpretations" that a device both needed (and did not need) to "generate random or sequential numbers" to qualify as an ATDS left the 2015 ruling "[in]consistent with reasoned decisionmaking." *Id.* Accordingly, the court "set aside" and invalidated the FCC's interpretation of what constituted an ATDS.

### 3. **Effect of *ACA International***

The parties agree that *ACA Int'l* is binding on this Court. (*See* Pl. Opp. Mem. at 7, "Plaintiffs agree with Horizon Solar that the D.C. Circuit's opinion in [*ACA Int'l*] is binding on this Court."). They also agree that *ACA Int'l* "overturned" the 2015 ruling's interpretation of an ATDS. *Id.* The parties disagree, however, as to whether *ACA Int'l* invalidated the definitions of an ATDS put forward in the FCC's 2003, 2008, and 2012 rulings.

Courts interpreting *ACA Int'l* have split on this issue. For example, in *Marks v. Crunch San Diego, LLC*, the Ninth Circuit concluded that *ACA Int'l* had invalidated the definitions put forward in each of the 2003, 2008, 2012, and 2015 FCC rulings. 904 F.3d at 1047 (holding that "in *ACA Int'l*, the D.C. Circuit . . . set aside the FCC's interpretations of the definition of an ATDS in the 2015 order . . . and any prior FCC rules that were reinstated by the 2015 order."). By contrast, other courts have concluded that *ACA Int'l* only invalidated the FCC's 2015 ruling, and not the earlier FCC rulings. *See McMillion v. Rash Curtis & Associates*, 2018 WL 3023449, at *3 (N.D. Cal. June 18, 2018) ("*ACA Int'l* invalidated only the 2015 FCC Order."); *see also*

7

*Reyes v. BCA Financial Services, Inc.*, 312 F. Supp. 3d 1308, 1321 (S.D. Fla. May 14, 2018) ("nowhere in the D.C. Circuit's opinion are the prior FCC orders overruled.").

Ultimately, however, that issue need not be decided here. Put simply, under either interpretation—that is, whether treating *ACA Int'l* as having invalidated all of the FCC's rulings, or treating *ACA Int'l* as having left the FCC's pre-2015 interpretations in place—this Court reaches the same conclusion: that equipment need not *itself* be able to generate random or sequential numbers to qualify as an ATDS under the TCPA.

### 4. **ATDS**

*ACA Int'l* did not answer the central question here: whether a device qualifies as an ATDS only if it can generate random or sequential numbers to be dialed. Indeed, the D.C. Circuit specifically stated that "[i]t might be permissible . . . to adopt either interpretation" in answering that question. *ACA Int'l*, 885 F.3d at 703.

Courts since *ACA Int'l* have split on whether a device must itself be able to generate random or sequential numbers to qualify as an ATDS.

The Third Circuit addressed a related, but somewhat different, issue in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 118 (3d Cir. 2018): whether, after *ACA Int'l*, a device must have the present —as opposed to latent or potential—"capacity" to perform the actions required by the TCPA to qualify as an ATDS under the statute. In answering that question, and affirming the district court's grant of summary judgment to the defendant, the court relied on the fact that the plaintiff "[could] not point to any evidence that creates a genuine dispute of fact as to whether [the defendant's device] had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Id.* at 120. But the court's reasoning went no further than that; it seems to have assumed that a device must itself be capable

of generating random or sequential telephone numbers to qualify as an ATDS.

Various district courts have concluded that a device must be capable of generating random or sequential telephone numbers to qualify as an ATDS. Those courts, however, have also mostly simply assumed that requirement. *See, e.g., Roark v. Credit One Bank, N.A.*, 2018 WL 5921652, at * 3 (D. Minn. Nov. 13, 2018) ("[I]n the wake of *ACA Int'l*," "the correct inquiry" to determine whether a device is an ATDS "is whether [the] device can generate numbers to dial either randomly or sequentially."); *Johnson v. Yahoo!, Inc.*, 2016 WL 25711, at *3 (N.D. Ill. Feb. 13, 2018) ("If the equipment pulls numbers from a stored list that was not generated by a random or sequential number generator (and does not have the capacity to generate random or sequential numbers), the equipment does not fit the statutory definition" of an ATDS.).

One exception is the opinion in *Thompson-Harbach v. USAA Federal Savings Bank*. 2019 WL 148711 (N.D. Iowa Jan. 9, 2019). In *Thompson-Harbach*, the judge conducted a detailed textual analysis of the TCPA and concluded that a device must be capable of generating random or sequential numbers to qualify as an ATDS. That conclusion primarily relied on what courts have referred to as the "punctuation canon." *Id.* at *12. The "punctuation canon" has been recognized by the Second, Third, Ninth, Eleventh, and Federal Circuits.[4] Under that canon,

---

[4] *See American International Group, Inc. v. Bank of America Corp.*, 712 F.3d 775, 781-82 (2d Cir. 2013) ("When there is no comma, . . . the subsequent modifier is ordinarily understood to apply only to its last antecedent. When a comma is included, . . . the modifier is generally understood to apply to the entire series."); *Stepnowski v. Commissioner of Internal Revenue*, 456 F.3d 320, 324 (3d Cir. 2006) ("[W]here there is a comma before a modifying phrase, that phrase modifies all of the items in a series and not just the immediately preceding item."); *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1000 (9th Cir. 2017); *Bingham, Ltd. v. United States*, 724 F.2d 921, 925-26, n. 3 (11th Cir. 1984) ("Where the modifier *is* set off from two or more antecedents by a comma, . . . the comma indicates the drafter's intent that the modifier relate to more than the last antecedent."); *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008) ("[W]hen a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents.").

a "qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one where the phrase is separated from the antecedents by a comma." *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1000 (9th Cir. 2017).

In the TCPA's definition of the ATDS, "the words 'using a random or sequential number generator' [are] set off from both verbs ('store' and 'produce') with a comma." *Thompson-Harbach*, 2019 WL 148711, at *12. Applying the punctuation canon to that definition, the court found, "[t]he comma separating 'using a random or sequential number generator' from the rest of subsection . . . makes it grammatically unlikely that the phrase modifies only "produce" and not "store." *Id.* Given that textual structure, the court concluded that a device "meets the definition of an ATDS only when it is capable of randomly or sequentially producing, or randomly or sequentially storing, telephone numbers." *Id.*

Other courts, including the Ninth Circuit—the only other circuit to have addressed this issue directly—have reached a different conclusion: that a device may qualify as an ATDS if it is incapable of generating random or sequential numbers to be dialed, and even if it is incapable of storing numbers "generated by a random or sequential number generator." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1050 (9th Cir. 2018).[5] In other words, the Ninth Circuit held in *Marks* that "a device can be an ATDS if it merely dials numbers from a stored list." *Id.*

In reaching that conclusion, the *Marks* court looked first to the text of the statute. "After struggling with the statutory language," and concluding that the language was "ambiguous on its

---

[5] The Second Circuit issued an opinion addressing the definition of an ATDS in June 2018. *See King v. Time Warner Cable*, 894 F.3d 473 (2d Cir. 2018). That opinion, however, focused on a different component of the definition than is at issue here and specifically left open the question raised by this case: "In *ACA International*, the D.C. Circuit noted that 'the role of the phrase, 'using a random or sequential number generator,' has generated substantial questions over the years,' which the FCC's 2015 Order failed to conclusively resolve. To the extent . . . we [require] that those complicated questions be answered in the present case, we leave it to the district court to address them." (internal citations removed).

10

face" and therefore "not susceptible to a straightforward interpretation based on the plain language alone," the court "turn[ed] to other aids in statutory interpretation." *Id.* at 1051.

First, the court looked to "the context and the structure of the statutory scheme." *Id.* In particular, the court considered "provisions in the TCPA [that] allow[] an ATDS to call selected numbers," such as the provision that permits using an ATDS for calls "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). "To take advantage" of this permission, the court concluded, "an [ATDS] would have to dial from a list of phone numbers of persons who had consented to such calls, rather than merely dialing a block of random or sequential numbers." *Marks*, 904 F.3d at 1051.

Second, the court's conclusion was supported by the record of the 2015 amendment to the TCPA by Congress. By that amendment, Congress added an exception that allowed an ATDS to be used to make calls "solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). In creating such an exception, the court concluded, Congress must have envisioned that an ATDS at times would be dialing numbers from pre-set lists of people who owed a debt to the United States. *Marks*, 904 F.3d at 1052. In addition, the fact that Congress "left the definition of ATDS untouched, even though the FCC's prior orders," including the 2015 ruling, "interpreted this definition to include devices that could dial numbers from a stored list," suggested to the court that Congress had "tacit[ly] approv[ed]" this interpretation. *Id.* at 1052.

Although not an obvious decision, the Court concludes that the understanding of the statute put forward in *Marks* is correct. In addition to the reasons provided by *Marks*, that conclusion is supported by the desire to avoid an anomaly that arises from the alternate reading of the statute. Under the alternate reading, the phrase "using a random or sequential number

11

generator" applies to both "store" and "produce." Applying the phrase to both words creates the following definitions for an ATDS: (1) "equipment which has the capacity to *store* . . . telephone numbers to be called [] using a random or sequential number generator" and (2) "equipment which has the capacity to *produce* . . . telephone numbers to be called [] using a random or sequential number generator." The second of those two definitions makes perfect sense; it is easy to imagine an ATDS that produces numbers using a number generator. The first definition, however, does not, because it is unclear how an ATDS—or indeed anything—could "store" numbers "using" a number generator.

Courts that follow the alternate reading address that anomaly by finding that the use of the verb "store" ensures that "a system that generated random numbers and did not dial them immediately, but instead stored them for later automatic dialing" would still qualify as an ATDS. *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162, n.4 (N.D. Ill. Nov. 29, 2018). Such a system, however, would also be covered by the reading of the statute in *Marks*—in other words, such a system would still qualify as equipment that has the capacity to *produce* numbers using a number generator. Accordingly, under that interpretation of the statute, the word "store" serves no purpose, and is rendered superfluous. Because it is a "cardinal principle" that courts "must give effect, if possible, to every clause and word of a statute," such a result weighs in favor of the *Marks* reading of the TCPA. *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

In summary, the TCPA is an unusually confusing statute. But considering the statute as it is written, the Court concludes that the phrase "using a random or sequential number generator" modifies only the verb "produce" and not the verb "store." Therefore, to qualify as an ATDS under the TCPA, a device need only have the capacity to do one of the following: either (1) "store . . . telephone numbers to be called" and "dial such numbers," *or* (2) "produce telephone

numbers to be called, using a random or sequential number generator" and "dial such numbers."

Accordingly, to the extent Horizon Solar seeks dismissal on the basis that the devices at issue do not qualify as ATDSs under the TCPA, the motion will be denied.

5. **Sufficiency of Allegations**

Horizon Solar also contends that "even if Plaintiffs allege[] the existence of an ATDS, their allegations are insufficient due to their conclusory nature." (Def. Mem. at 17). Essentially, Horizon Solar contends that plaintiffs' "bare" allegations that it called them using an ATDS are "conclusory" and do not allege enough independent details to raise an inference that an ATDS was in fact used. (*Id.* at 18-19).

"Although alleging specific details regarding a defendant's use of an ATDS can pose a challenge prior to conducting discovery, "courts nonetheless have held that to sustain a claim under the TCPA, "a plaintiff must plead more than the bare allegation that an ATDS was used. In light of these tensions, a plaintiff is permitted to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Kruskall v. Sallie Mae Service, Inc.*, 2016 WL 1056973, at *3 (D. Mass. 2016) (internal quotation marks and citations omitted).

The second amended complaint describes calls made to Davila-Lynch and calls made to Gonzalez separately. In describing the calls made to Davila-Lynch, it states that upon answering the calls, Davila-Lynch heard "lengthy pause[s] and [] click[s] followed by silence." (ECF 53, Second Am. Compl. ¶ 34). Courts have routinely held that allegations of hearing lengthy pauses, clicks, and then silence after answering a call are "adequate" to raise the "inference that [an] ATDS . . . was used" to make the call. *See e.g. Mauer v. American Intercontinental University, Inc.*, 2016 WL 4651395, at *4 (N.D. Ill. 2016) (holding that "[e]xamples of . . .

13

allegations" that raise the inference than an ATDS was used "include . . . having heard a distinctive 'click and pause' after [the plaintiff] answered the call.") (internal citations omitted). Furthermore, the second amended complaint alleges that Davila-Lynch heard "pre-recorded" messages during the calls he received from Solar Spectrum. (Second Am. Compl. ¶ 35).

Taken together, the facts alleged by the second amended complaint are sufficient to raise an inference that an ATDS was used to make the calls allegedly received by Davila-Lynch from Solar Spectrum.

The facts alleged as to the calls received by Gonzalez are more problematic. The second amended complaint alleges the following: that Gonzalez received calls from a "ViciDial predictive dialer" and a "Five9 virtual dialing sytem"; that there is "geographic distance between" him and the companies that called him; that the calls he received contained "scripted telemarketing pitches"; that he received eight calls in a period of about five weeks, including calls on five consecutive days between February 12 and February 16, 2018; and that his "experience" is apparently "not unique," as others have made online postings which claim to have received "scam" calls from Horizon Solar made from the same number that called his phone. (Second Am. Compl. ¶ 47-57).

Gonzalez does not allege that he heard a "click and pause" after he answered any of the calls. Nonetheless, the allegations are sufficient, if barely so, to raise a plausible inference that an ATDS was used. He alleges the use of a specific type of predictive dialer and dialing system, not simply a generic ATDS, and further alleges that the calls contained a scripted pitch. More significantly, the high number of calls in a short period of time, all for the same purpose, raises a plausible inference that an automated system was used. In short, therefore, Gonzalez has raised at least a plausible claim of TCPA violation.

B. <u>Mass. Gen. Laws ch. 93A</u>

Horizon Solar also seeks to dismiss the claims brought under the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, § 2. Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.,* 37 Mass.App.Ct. 610, 620 (1994). Essentially, Horizon Solar contends that plaintiffs "have not and cannot allege facts sufficient to support a claim that [Horizon Solar] engaged in unfair and deceptive acts or practices." (Def. Mem. at 16).

Plaintiffs cite to 940 C.M.R. § 3.16, a regulation promulgated by the Attorney General of Massachusetts, which states that "an act or practice is a violation of [Mass Gen. Laws ch. 93A, § 2] if . . . [i]t violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of [Mass Gen. Laws ch. 93A, § 2]." 940 C.M.R § 3.16(4). Essentially, plaintiffs contend that because the TCPA is a "federal consumer protection statute[]," a violation of the TCPA qualifies as "a violation of [Mass Gen. Laws ch. 93A, § 2]" under the regulation.

The TCPA is, indeed, a federal consumer protection statute; indeed, the very name of the statute is the Telephone *Consumer Protection* Act. However, a statutory violation, without more, does not constitute a violation of Chapter 93A in an action brought by a consumer. *Jones v. Experian Information Studios, Inc.*, 141 F. Supp. 3d 159, 163 (D. Mass. 2015). Rather, "a plaintiff bringing an action . . . under [Chapter 93A] must allege and ultimately prove that she has, as a result [of the statutory violation], suffered a *distinct injury or harm* that arises from the claimed unfair and deceptive act." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017)

(quoting *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013)).

Plaintiffs here allege that they suffered injury when they were "temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was invaded." (Compl. ¶ 29). They further allege that the calls were "frustrating, obnoxious, annoying, were a nuisance and disturbed [their] solitude." (*Id.* ¶ 30).

A claim by a consumer under Chapter 93A requires proof of "real economic damages," separate from the violation itself; it is not enough to prove a violation of an abstract right, or merely subjective emotional injuries. *See Shaulis*, 865 F.3d at 10. Here, the only potentially economic injury alleged is the claimed charges for calls. The complaint does not allege a specific dollar amount, and presumably such charges are imposed only with certain types of cell phone plans. That is, to say the least, a slender thread on which to hang a Chapter 93A claim. Nonetheless, it is at least a plausible claim of economic injury, sufficient to survive a motion to dismiss. To the extent, however, the complaint alleges other injuries, such as annoyance or frustration, they are not legally cognizable under Chapter 93A, at least in an action brought by a consumer. Accordingly, Horizon Solar's motion to dismiss will be denied as to the claim brought under Chapter 93A, but the claim may proceed only on a theory of economic injury, based on charges incurred for receiving the calls.

## IV. Conclusion

For the foregoing reasons, the motion of defendant HOSOPO Corporation, doing business as Horizon Solar Power, to dismiss the complaint for failure to state a claim is DENIED.

16

**So Ordered.**

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Dated: April 9, 2019                                          United States District Judge