## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JEREMIAH DAVILA-LYNCH on behalf   :
of himself and others similarly situated,   :
    :
    Plaintiff,   :   Case No. 1:18-cv-10072-FDS
    :
v.   :
    :
    :
HOSOPO CORPORATION D/B/A   :
HORIZON SOLAR POWER   :
    :
    Defendant.   :
    :
_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

## INTRODUCTION

Plaintiff Jeremiah Davila-Lynch ("Plaintiff"), along with the defendant HOSOPO Corporation d/b/a Horizon Solar Power ("Defendant" and with Plaintiff referred to as "the Parties"), have reached a settlement of this matter.[1] The Settlement includes the establishment of an $800,000 Settlement Fund to be distributed to Settlement Class Members who file a valid claim after payment of Notice and Administration Costs (if approved), Settlement Class Counsel fees (if any), and an incentive award to the Plaintiff (if any).[2] There is no reverter to the Defendant of any portion of the Settlement Fund. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained in discovery, and a website will be established through which Claim Forms may be obtained or directly submitted.

The Settlement was only reached after multiple mediations, one with Bruce Friedman of JAMS and a final mediation with Hon. Morton Denlow (Ret.) of JAMS. The Settlement was also reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Particularly relevant in this case, in addition to providing monetary relief to the class, the Defendant has agreed to take remedial steps in an effort to ensure its telemarketing going forward is TCPA compliant. In addition, the Defendant is without financial means to provide full relief to the class and would be bankrupted if this case were to proceed to a trial resulting in a full judgment, or

---

[1] The Defendant does not oppose this motion insofar as it supports the settlement. The Defendant does not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"), attached as Exhibit 1.

anything approaching it, in Plaintiff's favor. In fact, without the participation of its insurer, who defended this action under a reservation of rights and filed a declaratory judgment action that was pending during settlement, no settlement would have been possible.

Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Settlement Class Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Form; and (6) schedule the Final Approval Hearing and related dates as proposed.

## I.     BACKGROUND AND NATURE OF THE CASE

In 1991, Congress enacted the TCPA to protect consumers from intrusive and unwanted calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Congress explained: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

The TCPA makes it unlawful to initiate any call using an ATDS to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes," or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). A person who receives a telemarketing call on their cell phone that is made via an ATDS can sue the violator

and seek statutory damages. 47 U.S.C. § 227(b). The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5). The TCPA provides a private cause of action to persons who receive such calls. *Id.*

The TCPA does allow for telemarketing calls to be made to cell phones via an ATDS in those limited instances where the caller has first obtained the recipient's "prior express written consent" to receive the call. *See Larson v. Harman Mgmt. Corp,* 2016 U.S. Dist. LEXIS 149267 *5-7 (E.D. Cal. Oct. 27, 2016); 47 C.F.R. § 64.1200(a)(2); 2012 TCPA Order, 27 FCC Rcd. at 1838-44.

Defendant provides solar services. *See generally* First Amended Complaint, ECF No. 53. However, its contact with the general public is limited – instead, it contracts with third parties to provide telemarketing services in hopes of signing up new customers, including the former co-defendant Flowmedia Solutions, LLC. In discovery, Flowmedia produced a spreadsheet of each telemarketing call it made for Defendant. Through discovery, the parties took depositions and exchanged more than 5,000 pages of documents. During discovery, the parties mediated this matter with Bruce Friedman of JAMS in December of 2019 in California. That mediation was not successful.

At the conclusion of discovery, the Plaintiff filed a class certification motion. Defendant's insurance company had also filed a declaratory judgment action claiming that the insurance policy at issue provided no coverage for this claim. While those were pending, the parties engaged in a mediation with Hon. Morton Denlow on July 14, 2020. That mediation resulted in a term sheet that formed the basis for the agreement that is being present to this Court for approval.

## II.    THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following

Settlement Class for settlement purposes only:

> (1) All persons in the United States who are the users or subscribers of the telephone numbers identified by Flowmedia in Jamie Williams' affidavit as being called for Horizon Solar (2) using the ViciDialer dialing system (3) from October 16, 2017 through December 8, 2017.

(Agreement ¶ 1.29). The proposed Settlement encompasses approximately 2,800 individuals.

The proposed Settlement establishes a non-reversionary $800,000.00 Settlement Fund, which

will exclusively be used to pay: (1) cash awards to Settlement Class Members; (2) Settlement

Administration Expenses; (3) attorney's fees in addition to out of pocket expenses, subject to

Court approval; and (4) a court-approved incentive award to the Class Representative of up to

$10,000. Each Settlement Class Member who submits a valid claim shall be entitled to receive

an equal *pro rata* amount of the Settlement Fund after the Fees, Costs and Expenses Award,

Service Payment and Notice and Administration Expenses are paid out of the Settlement Fund.

In addition, the Defendant has agreed to take remedial steps to ensure its telemarketing going

forward is TCPA compliant, including terminating their relationship with the vendor that made

the calls that are the subject of this action.

### A.    Opt-Out and Objection Procedures

Persons in the Settlement Class will have the opportunity to exclude themselves from the

Settlement or object to its approval. (Agreement ¶ 6). The procedures and deadlines for filing

requests for exclusion and objections will be conspicuously listed in the Postcard Notice, Long-

Form Notice and on the Settlement Website. The Postcard Notice and Long-Form Notice

informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. The Postcard Notice and Long-Form Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement unless they timely exercise their opt-out right. (Agreement ¶ 6.2.3).

**B.      Release**

The release is appropriately tailored to this case involving alleged violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendant from any and all claims against the Defendant. The Release is limited to claims arising from telemarketing calls that could have generated leads for HOSOPO Corporation d/b/a Horizon Solar Power and is further limited only to the individuals contained on the Class List. (Agreement ¶2.2.1).

**C.      Class Representative Service Award**

If approved by the Court, the Plaintiff will receive an incentive award of $10,000 from the Settlement Fund. This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

**D.      Attorneys' Fees, Costs, and Expenses Award**

If the Settlement receives preliminary approval, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund in addition to out of pocket expenses of up to $32,000. An award of attorneys' fees and costs will compensate Plaintiff's Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### E.    Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Notice and Administration Expenses, and any Fees, Costs, and Expenses Award and Service Award will be distributed to a Court-approved *cy pres* recipient. The Parties propose National Consumer Law Center as an appropriate recipient. (Agreement. ¶3.5).

## III.    NOTICE AND SETTLEMENT ADMINISTRATION

Notice and Administration Expenses will be exclusively paid from the Settlement Fund. The Parties have agreed upon, and propose that the Court approve, the nationally recognized class action administration firm KCC to be the Settlement Administrator, to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. (Agreement. ¶1.28). KCC estimates the costs to administer the Settlement will be approximately $30,000.

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. In this Circuit, it has long been the case that a notice of settlement will be adjudged adequate where the notice announces the date of the settlement hearing, outlines the allegations prompting the litigation, and summarizes the settlement terms. *See Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

The proposed Notice more than satisfies all requirements. The language of the Postcard Notice and Long-Form Notice was negotiated and has been agreed to by the parties. The proposed Postcard Notice and Long-Form Notice is written in simple terminology and includes: (1) a description of the Class; (2) a description of the claims asserted in the class actions; (3) a description of the Settlement; (4) the deadlines for filing a claim form and/or for exercising the right to opt-out (including limitation on the opt-out right); (5) the names of counsel for the class; (6) the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing; and (9) the deadline for filing objections to the settlement.

The contents of the proposed Postcard Notice and Long-Form Notice are more than adequate. It provides Settlement Class Members with sufficient information to make an informed and intelligent decision whether to object to the Settlement. As such, it satisfies the content requirements of Rule 23. *See e.g. In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

The dissemination of the Postcard Notice and Long-Form Notice satisfies all due process requirements. The Settlement Agreement provides for notice to the class through mailing of the Postcard Notice. Settlement Class Members will be able to return a Claim Form provided with the Postcard Notice, and will have the ability to request the delivery of a claim form or file a claim electronically. The Postcard Notice and Long-Form Notice will outline the allegations of the case, will advise class members of their right to opt out, and will and announce the date of the fairness hearing. In sum, the contents and dissemination of the proposed Postcard Notice and

Long-Form Notice constitutes the best notice practicable under the circumstances, and complies

fully with the requirements of Rule 23

### IV.    THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE AND ADEQUATE

As a general matter, settlements "will be upheld whenever possible because they are a

means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins.*

*Co.*, 559 F.2d 426, 428 (5th Cir. 1977). The First Circuit Court has long recognized that there is

an overriding public interest in favor of settling class actions, *Lazar v. Pierce,* 757 F.2d 435, 439

(1st Cir. 1985); *see In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass.

2005) ("the law favors class action settlements"). In addition, "[t]here is usually an initial

presumption of fairness when a proposed class settlement, which was negotiated at arm's length

by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, Newberg on

Class Actions (4th ed. 2002), §11.41; *see In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708,

1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment

of experienced counsel in its evaluation of the merits of a class action settlement"). Although the

trial court must consider the terms of a class action settlement, "'[j]udges should not substitute

their own judgment as to optimal settlement terms for the judgment of the litigants and their

counsel.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999). A district court

"can approve a class action settlement if it is fair, adequate and reasonable." *City Pshp. Co. v.*

*Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996), quoting *Durrett v. Housing Auth. of*

*City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). At the preliminary approval stage, this

Court need only be satisfied that there is "probable cause" to believe that the settlement is fair

and reasonable. *Id.*

The Manual For Complex Litigation sets forth the procedures for preliminary approval of settlements:

> *If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.*

*Manual*, § 21.632.

Thus, the question for this Court is whether the settlement falls well within the "range of possible approval," *id.,* and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). *See Durrett,* 896 F.2d at 604. The initial presumption of fairness of a class settlement may be established by showing (1) That the settlement has been arrived at by arm's-length bargaining; (2) That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) That the proponents of the settlement are counsel experienced in similar litigation. Newberg, at §11.41.

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [Citation omitted] . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc*., 450 U.S. 79, 88 n.14 (1981). The Settlement is well within "the range of possible approval" and should be preliminarily approved in all respects.

### A.    The Settlement Resulted From Arm's Length Negotiations -- It is Not the Product of Collusion

The requirement that a settlement be fair is designed to protect against collusion among the parties. The Plaintiffs first note that "[t]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for court approval." Newberg at §11.41. This matter only reached resolution after two mediations, the final mediation occurred following discovery and with the assistance of Hon. Morton Denlow (Ret.) a former Magistrate Judge for the United States District Court for the Northern District of Illinois. As such, the settlement resulted from arm's length negotiations. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (sufficient discovery and bargaining at arm's length creates a presumption in favor of settlement approval). Counsel Declarations attached as <u>Exhibit 2</u>. The experience of counsel as longstanding class-action attorneys, the involvement of skilled mediators and the fair result reached are illustrative of the arm's-length negotiations that lead to the Settlement Agreement.

### B.    The Factual Record Was Well Developed Through Independent Investigation

Prior to the settlement discussions, the parties engaged in extensive discovery, with settlement discussions only occurring after the discovery period and when the class certification motion was pending. Through this discovery, Plaintiff was able to assess the strengths and weaknesses of the case. By the time the Settlement was reached, Plaintiff and Settlement Class Counsel, who are experienced in bringing TCPA class actions, had "a clear view of the strengths and weaknesses" of their case. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). In sum, through their own investigation, Plaintiff and his counsel are in a strong position to make an informed decision on the merits of recommending the settlement, as

they had a "full understanding of the legal and factual issues surrounding [the] case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). This strongly supports settlement approval.

### C.    The Settlement Was Negotiated by Experienced Counsel

Counsel for the Plaintiff are experienced in class action litigation. As a result of the evaluation of counsel, the Settlement was reached as a means of fully resolving the cases without the burden or risks attendant with further litigation.

### D.    Continued Litigation Came With Significant Risks

The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Here, litigating the case through trial would undoubtedly be time-consuming and expensive. As with most class actions, this case is complex. Absent settlement, litigation could likely continue for years before Plaintiff or the Settlement Class would see any recovery. That a settlement would eliminate the delay and expenses strongly militates in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Although Plaintiff here believes that he would ultimately prevail on the merits at trial, success is far from assured. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation with substantial risk. One of those risks focuses on the question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA. This question is set to be answered by *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) was also accepted by the Supreme Court for the 2021 term. The dialing system allegedly used by Flowmedia is less likely to be found to be an ATDS in the 3rd and 11th Circuit due to recent developments in those Circuits. Specifically, those decisions are *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). These cases should be considered a significant risk if the case here were litigated to judgment, because there

was a likelihood that, given the split in authority, Supreme Court review could result in a less favorable ATDS interpretation.

If the Supreme Court were to agree with the Third or Eleventh Circuit Court of Appeals, no one, including the Plaintiff, would have been able to recover *anything at all*. Other courts have adopted the same position. *See e.g. Marshall v. CBE Group, Inc.*, Case No. 2:16-cv-02046-GMN, 2018 WL 1567852 (D. Nev. Mar. 30, 2018); *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018); *Gary v. TrueBlue, Inc.*, Case No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018); *Keyes v. Ocwen Loan Servicing*, No. 17-cv-11492, 2018 U.S. Dist. LEXIS 138445, at *15 (E.D. Mich. Aug. 16, 2018).

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per

violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, the Court explained in *Golan v. Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action lawsuit to $10 a call. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017).

Aside from the litigation risks, Defendant made clear at mediation that it was without the financial means to pay a full judgment had this matter proceeded to trial and through appeal with a result favorable to the Plaintiff. The financial condition of a Defendant is an important factor in evaluating the fairness of a proposed settlement. *See e.g. Krimes v. JPMorgan Chase Bank, N.A.*, No. 15-5087, 2017 U.S. Dist. LEXIS 79434 * 23-25 (E.D. Pa. May 24, 2017) (recognizing financial inability of defendant to pay a larger judgment as a relevant factor for consideration on preliminary approval of a class action settlement).

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Settlement Class Members' claims against Defendant. These avenues of relief provide a benefit to Settlement Class Members. In addition, however, Defendant has agreed to take remedial measures to ensure that its telemarketing is TCPA

compliant going forward. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the Defendant's financial position, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

### V.    THE COURT SHOULD CERTIFY A SETTLEMENT CLASS.

The Supreme Court has made clear that even when the Court determines that a settlement is fair under the strictures of Fed. R. Civ. P. 23(e), it still must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997); *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 858 (1999).

### A.    Rule 23(a)'s Requirements Are Satisfied

#### 1.    Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005). The standard of impracticability does not mean "impossibility" but only difficulty or inconvenience of joining all members of the class. The issue is not the numerical size of the class but, as explicitly stated in Rule 23(a)(1), that joinder is impracticable. *Hatisberry v. Lee*, 311 U.S. 32, 41 (1941).

The proposed settlement class encompasses 2,800 individuals. This number of class members demonstrates that joinder is simply a logistical impossibility. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900 member class made joinder impracticable).

### 2.    Commonality

Rule 23(a)(2) commonality exists "if there are questions of law or fact common to the class." *Swack*, 230 F.R.D. at 259. This requirement is construed permissively, and is often easily met. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (describing the commonality requirement as a "low hurdle"); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003) ("the commonality requirement ordinarily is easily met"). Rule 23(a)(2) does not require that every single question of law or fact raised in the litigation must be common. *In re Polymedia Corp. Sec. Litig.*, 224 F.R.D. 27, 35 (D. Mass. 2004). Rather, commonality is satisfied by showing a single issue common to all members of the class. *Payne*, 216 F.R.D. at 25.

As other courts in this District have held, "the commonality requirement is met where the "questions that go to the heart of the elements of the cause of action" will "each be answered either 'yes' or 'no' for the entire class" and "the answers will not vary by individual class member." *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 285 (D. Mass. 2015) (Saris, J.) *quoting Donovan v. Philip Morris USA, Inc.*, 2012 U.S. Dist. LEXIS 37974 at *21 (D. Mass. Mar. 21, 2012). Here, Plaintiff contends that the common questions are dispositive, apply equally to all class members, and can be resolved using common proof and uniform legal analysis. They include: 1) Is the dialing system utilized an "automatic telephone dialing system" as that term is defined in the TCPA? 2) Did Defendants have the recipient's "prior express consent" signed in writing? 3) Are class members entitled to statutory damages? 4) Is Horizon Solar vicariously liable for the telemarketing activity of Flowmedia? 5) Should those damages constitute "willful" or "knowing" violations of the TCPA, and thereby entitle all class members to treble damages under the TCPA? Plaintiff believes that these legal and factual questions are shared by all class members.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class ...". The requirement is satisfied if the "class representative[s] ... 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To be typical within the meaning of the rule simply requires that the claims of the named plaintiffs arise from the same types of conduct which give rise to the class members' claims. *Burstein v. Applied Extrusion Technologies, Inc.,* 153 F.R.D. 488, 491 (D. Mass. 1994); *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991). Typicality does not require that the named plaintiffs' claims be identical to those of the class. Under the Rule's "permissive" standard, representative claims are typical if they are reasonably co-extensive with those of absent class members. *Swack*, 230 F.R.D. at 260. As long as the named representative's claim arises from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory, varying factual differences between the claims or defenses of the class and the class representative will not render the named representative's claims atypical. *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997).

Here, Plaintiff contends that he and all Settlement Class Members received telemarketing calls promoting the same services, from the same caller, and by the same dialing system on their cellular telephones. All putative class members' claims flow from the same conduct and as such, typicality is satisfied.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiffs will act diligently on behalf of the class. *Amchem*,

521 U.S. at 625; *Duhaime*, 177 F.R.D. at 64. The First Circuit employs a two-part test in analyzing adequacy: (1) the class representatives' interests must not conflict with the interests of the class; and (2) class counsel is experienced, qualified and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Berman v. Narragansett Racing Ass'n, Inc.,* 414 F.2d 311, 317 (1st Cir. 1969).

Both requirements are met. First, Plaintiff's counsel are experienced class action lawyers whose combined experience in TCPA class actions, and current diligence and commitment to this litigation, will more than adequately protect the interests of the class. *See* Exhibit 2, Declarations of Counsel. Second, there is no conflict or antagonism whatsoever between the Plaintiff and the Settlement Class Members. All share a united interest in putting an end to Defendant's allegedly illegal telemarketing practices, and all seek redress for the harm they suffered as a result of the practices.

### B.      Rule 23(b)(3) Is Satisfied

#### 1.      Common Issues Predominate

Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625. As the Supreme Court has held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1191 (2013). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* TCPA claims, by their nature, involve large numbers of plaintiffs who received identical telemarketing contacts, a small number of defendants, and a common course of conduct that affected each plaintiff in the same way. Furthermore, as discussed above in connection with the commonality requirement under Rule 23(a)(2), the Plaintiff contends he has

identified at least five common issues that arise from Defendant's common course of conduct and are suitable for class adjudication.

Predominance exists here. As discussed above, virtually all of the issues of law and fact are identical among the class members. Under these circumstances, the requirements of Rule 23(b)(3) are present. The courts have routinely found predominance of common questions where the claims relate to a common course of conduct. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. 54, 64 (D. Mass. 1997) (requirement is "readily met in cases alleging consumer … fraud" where claim alleges single course of conduct, quoting *Amchem*, 521 U.S. at 625).

### 2.    A Class Action Is the Superior Method Of Adjudicating This Matter

The second prong of the analysis under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The TCPA, its allocation of statutory damages in an amount not to exceed $1,500 and its lack of a mechanism to award attorneys' fees, effectively means that it is not economically viable for class members to pursue claims against the defendants on an individual basis. This consideration is particularly compelling here. As the United States Supreme Court has stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual action to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.,* 521 U.S. at 609. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. Indeed, the Massachusetts Court of

Appeals has stated "the majority of courts to have discussed the issue under various cognate class action provisions and hold that the class action mechanism is a superior avenue for adjudication of claims under 47 U.S.C. § 227." *Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.,* 2014 WL 4106870, 3 (Mass. App. Ct. August 22, 2014). Just like other federal courts have determined with respect to TCPA cases, a single litigation is superior to a series of other litigations or to individuals potentially foregoing their claims.

<h2 style="text-align:center">V.  SCHEDULE OF EVENTS</h2>

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and deadlines for filing claims, objecting to the Settlement, opting out of the Settlement Class, and filing papers in support of the Settlement. The Parties propose the following schedule:

| | |
|---|---|
| **Notice mailed to Class and Published on the Website ("Notice Date")** | **30 Days After Entry of Preliminary Approval Order** |
| **Objection, Exclusion and Claim Deadline** | **90 Days After Entry of Preliminary Approval Order** |
| **Deadline for filing papers in support of final approval of the Settlement.** | **14 Days Before Final Approval Hearing** |
| **Final Approval Hearing** | **At the Court's convenience but at least 120 days after the Entry of Preliminary Approval** |

<h2 style="text-align:center">VI.    CONCLUSION</h2>

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's preliminary approval, and Plaintiff's Counsel respectfully requests that the motion be granted. Along with this memorandum, counsel will submit a Draft Preliminary Approval Order, attached as <u>Exhibit 3</u>.

Plaintiff,
By Counsel,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Dated: August 31, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich