# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JEREMIAH DAVILA-LYNCH on behalf    :
of himself and others similarly situated,    :
                                        :
       Plaintiff,                 :      Case No. 1:18-cv-10072-FDS
                                          :
v.                                            :
                                           :
HOSOPO CORPORATION D/B/A         :
HORIZON SOLAR POWER               :
                                           :
       Defendant.              :
                                           :
_____ /

## PLAINTIFF'S MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

## INTRODUCTION

Plaintiff Jeremiah Davila-Lynch ("Plaintiff"), along with the defendant HOSOPO Corporation d/b/a Horizon Solar Power ("Defendant" and with Plaintiff referred to as "the Parties"), have reached a settlement of this matter.[1] The Settlement includes the establishment of an $800,000 Settlement Fund to be distributed to Settlement Class Members who file a valid claim after payment of Notice and Administration Costs (if approved), Settlement Class Counsel fees (if any), and an incentive award to the Plaintiff (if any).[2] There is no reverter to the Defendant of any portion of the Settlement Fund. The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The parties negotiated the Settlement with the assistance of a highly skilled and experienced mediator, which included the exchange of detailed mediation statements. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Particularly relevant in this case, in addition to providing monetary relief to the class, the Defendant has agreed to take remedial steps to ensure its telemarketing going forward is TCPA compliant. In addition, the Defendant is without financial means to provide full relief to the class and would be bankrupted if this case were to proceed to a trial resulting in a full judgment, or anything approaching it, in Plaintiff's favor as it has ceased operations.

Pursuant to the Court-approved notice plan, direct individual notice of the Settlement was sent to the Settlement Class. The reaction of the class to this settlement has been overwhelmingly

---

[1] The Defendant does not oppose this motion insofar as it supports the settlement. The Defendant does not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"). *See* ECF No. 171-1.

positive. Most importantly, even though over 2,500 of the members of the class received direct, personal notice by U.S. Mail (not mere "publication" notice, as sometimes occurs in class action settlements), no class members objected.[3] 117 class members took the time to file a claim and those who have done so stand to receive at least ***$3,000 each***. Following direct notice under CAFA to each state attorney general's office, no state attorney general, nor the Attorney General of the United States, has objected. In summary:

|                          |                  |
|--------------------------|------------------|
| Notice Reach:            | 91.75%           |
| Claims Received:         | 117 out of 2,800 |
| Claims Rate:             | 4.17%            |
| Class Member Objections: | 0                |
| Exclusions:              | 2                |
| Estimated Recovery:      | $3,856.07[4]     |

The Settlement is an excellent result for the Class, particularly in view of the risks and delays involved in continued litigation. Considering the overwhelmingly favorable support for the Settlement from the class members, Plaintiff respectfully requests that this Court finally approve the Settlement in its entirety.

---

[3] As discussed in more detail below, there was an objection from Edward Orr. However, Mr. Orr is *not* a member of the Settlement Class. Furthermore, Mr. Orr's objection relates solely to ensuring the rights of the handicap are adequately addressed in the settlement. While this is a noble notion, they are. Recipients of automated calls have the right to statutory damages, and that exists regardless of the physical condition of the call recipient.

[4] Class Counsel understands that during the COVID-19 Pandemic that the defendant has potentially sold their company or is no longer doing business. This is relevant for the settlement recovery because the Defendant is independently obligated to fund $100,000 of the $800,000 settlement. If they fail to do so, the Claimant's recovery will be $3,008.62. *See* Declaration of Jay Geraci, attached as <u>Exhibit 1</u> at ¶ 16. This is the amount of recovery for each telephone number. One class member has two telephone numbers on the class list and will receive twice the amount.

## A.    NATURE AND BACKGROUND OF THE CASE

In 1991, Congress enacted the TCPA to protect consumers from intrusive and unwanted calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Congress explained: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

The TCPA makes it unlawful to initiate any call using an ATDS to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes," or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). A person who receives a telemarketing call on their cell phone that is made via an ATDS can sue the violator and seek statutory damages. 47 U.S.C. § 227(b). The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5). The TCPA provides a private cause of action to persons who receive such calls. *Id.*

The TCPA does allow for telemarketing calls to be made to cell phones via an ATDS in those limited instances where the caller has first obtained the recipient's "prior express written consent" to receive the call. *See Larson v. Harman Mgmt. Corp,* 2016 U.S. Dist. LEXIS 149267 *5-7 (E.D. Cal. Oct. 27, 2016); 47 C.F.R. § 64.1200(a)(2); 2012 TCPA Order, 27 FCC Rcd. at 1838-44.

Defendant provides solar services. *See generally* First Amended Complaint, ECF No. 53. However, its contact with the general public is limited – instead, it contracts with third parties to provide telemarketing services in hopes of signing up new customers, including the former co-defendant Flowmedia Solutions, LLC. In discovery, Flowmedia produced a spreadsheet of each telemarketing call it made for Defendant. Through discovery, the parties took depositions and exchanged more than 5,000 pages of documents. During discovery, the parties mediated this matter with Bruce Friedman of JAMS in December of 2019 in California. That mediation was not successful.

At the conclusion of discovery, the Plaintiff filed a class certification motion. Defendant's insurance company had also filed a declaratory judgment action claiming that the insurance policy at issue provided no coverage for this claim. While those were pending, the parties engaged in a mediation with Hon. Morton Denlow on July 14, 2020. That mediation resulted in a term sheet that formed the basis for the agreement that is being present to this Court for approval.

**B.    THE PROPOSED SETTLEMENT**

**1.    Structure of the Settlement**

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following Settlement Class for settlement purposes only:

> (1) All persons in the United States who are the users or subscribers of the telephone numbers identified by Flowmedia in Jamie Williams' affidavit as being called for Horizon Solar (2) using the ViciDialer dialing system (3) from October 16, 2017 through December 8, 2017.

(Agreement ¶ 1.29). The proposed Settlement encompasses approximately 2,800 individuals. The proposed Settlement establishes a non-reversionary $800,000.00 Settlement Fund. In addition, the Defendant has agreed to take remedial steps to ensure its telemarketing going

forward is TCPA compliant, including terminating their relationship with the vendor that made the calls that are the subject of this action.

## 2. Claims Administration

On September 10, 2020, this Court granted preliminary approval to the settlement. Dkt. No. 172. As part of the Court's order, at the parties' recommendation, and after a competitive bidding process, KCC Class Action Services, LLC ("KCC") was appointed as Settlement Administrator to give notice to the Settlement Class. The Settlement Class, in turn, consists of 2,800 owners or users of unique telephone numbers contained on the Class List. Pursuant to the notice plan, KCC mailed Notice Packets to Settlement Class Members. *See* <u>Exhibit 1</u>. Of those mailed, 268 notices were returned as undeliverable, and through a search of various publicly available sources, KCC was able to re-mail 35 of those notices to the best available forwarding address. *Id.* at ¶ 10. As a result, approximately 91% of the mailed notices have, as best as the parties can determine, reached class members. *Id.* Such a percentage far exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%. ); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."). In addition to the direct mailed notice, KCC also established a website, www.HorizonCallsSettlement.com, by which potential class members could view settlement documents and make claims, the website received 14,078 visits. *See* <u>Exhibit 1</u> at ¶ 11.  KCC also established a toll-free telephone number through which potential class members could receive additional information about the settlement. *Id.* at ¶ 12. Finally, KCC provided notice to relevant

governmental entities pursuant to the Class Action Fairness Act ("CAFA").  No government entities have voiced any disagreement with any aspect of the settlement.  *Id.* at ¶ 2.

### 3.    Response of the Class.

Pursuant to the Court's preliminary approval order, class members had until December 10, 2020, to submit a claim under the settlement.  KCC received 117 valid claims by the postmark deadline.  *See* Exhibit 1 at ¶ 14. This represents a combined claims rate of approximately 4.17%, an amount consistent with other comparable TCPA settlements. *Compare Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.,* No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp.*, P.C., No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

### C.    THE SETTLEMENT MEETS ALL REQUIREMENTS FOR FINAL APPROVAL

Under Fed. R. Civ. P. 23(e), a class action settlement agreement requires the court's approval.  "A district court can approve a class action settlement only if it is fair, adequate and reasonable." *City P'shp. Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996). In considering final approval of a class action settlement, courts in the First Circuit consider the following list of factors in deciding whether to approve a settlement; (1) the complexity, expense

and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *New England Carpenters Health Benefits Fund v. First Databank, Inc.,* 602 F. Supp. 2d 277, 281 (D. Mass. 2009); *In re Lupron Marketing And Sales Practices Litigation,* 228 F.R.D. 75, 93 (D. Mass. 2005). Similarly, Rule 23, as revised as of December 1, 2018, sets forth a list of overlapping points a court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Those factors are satisfied here.

## 1. The Class Representatives and Class Counsel Have Adequately Represented the Class.

In a class settlement context, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-CV-2898, 09-CV- 2026, 2012 U.S. Dist. LEXIS 25265, at * 39 (N.D. Ill. Feb. 28, 2012)

(quoting *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Previously, counsel for the class have submitted to the Court for its review their qualifications and a detailed disclosure of the course of this litigation through to final approval. In light of this history, counsel for the Plaintiff had a complete picture of the case, and did everything possible to get the best possible result for class members. Based on these efforts, the case was highly developed by class counsel is experienced, competent, qualified and able to conduct the litigation vigorously. Plaintiff and his counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Plaintiff also believes that the benefits of the parties' settlement far outweigh the delay and considerable risk of proceeding to a contested class certification and trial.

### 2. The Settlement Was Negotiated at Arm's-Length, and There Has Been No Fraud or Collusion.

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, Newberg on Class Actions (4th ed. 2002), §11.41. This is especially true when those negotiations involved a mediator. *See Lapan v. Dick's Sporting Goods, Inc.,* No. 1:13-cv-11390-R, 2015 U.S. Dist. LEXIS 169508, at *3 (D. Mass. Dec. 11, 2015) ("The assistance of an experienced mediator…reinforces that the Settlement Agreement is non-collusive."). Here, the Settlement Agreement resulted from good faith, arm's-length settlement negotiations. At the conclusion of discovery, the Plaintiff filed a class certification motion. Defendant's insurance company had also filed a declaratory judgment action claiming that the insurance policy at issue provided no coverage for this claim. While those were pending, the parties engaged in a mediation with Hon. Morton Denlow on July 14, 2020. That mediation resulted in a term sheet that formed the basis for the agreement that is being present to this Court

for approval.

### 3.    The Settlement Provides Substantial Relief for the Class

Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the

class is adequate" and "the proposal treats class members equitably relative to each other." The

relief this Settlement provides meaningful and substantial relief, including a payment of ***nearly***

***$4,000*** to claimants.  The Settlement's terms ensure all Settlement Class Members will be treated

equitably.

### 4.    Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement.

The expense, complexity and duration of litigation are significant factors considered in

evaluating the reasonableness of a settlement. Here, litigating the case through trial would

undoubtedly be time-consuming and expensive. As with most class actions, this case is complex.

Absent settlement, litigation could likely continue for years before the class would see any

recovery. That a settlement would eliminate the delay and expenses strongly militates in favor of

approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Although Plaintiff here

believes that he would ultimately prevail on the merits at trial, success is far from assured. If

approved, the Settlement would bring a sure end to what would be contentious and costly

litigation with substantial risk.

Another substantial risk in this case focuses on the question of whether the dialing system

used was an "Automatic Telephone Dialing System" under the TCPA. This question is set to be

answered by *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) was also accepted by the

Supreme Court for the 2021 term. The dialing system allegedly used by HelloFresh is less likely

to be found to be an ATDS in the 3rd, 7th and 11th Circuit due to recent developments in those

Circuits. Specifically, those decisions are *Gadelhak v. AT&T Servs.,* 950 F.3d 458 (7th Cir.

2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). These cases should be considered a significant risk if the case here were litigated to judgment, because there was a likelihood that, given the split in authority, Supreme Court review could result in a less favorable ATDS interpretation. Notably, Justice Amy Coney Barrett wrote the decision for the Seventh Circuit in *Gadelhak*.

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation). In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, in *Golan v. Veritas Entm't, LLC*, the court reduced the damages awarded in that TCPA class action lawsuit to $10 a call. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017).

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant. These avenues of

relief provide a benefit to Class Members. In addition, however, Defendant has agreed to take remedial measures to ensure that its telemarketing is TCPA compliant going forward. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the Defendant's financial position, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

### 5. The Monetary Terms of this Proposed Settlement Fall Favorably within the Range of Prior TCPA Class Action Settlements.

The Settlement requires Defendant to pay $800,000 into a Settlement Fund. Class Members who submitted a valid claim will receive at least $3,0000[7], an amount that far exceeds comparable settlements.[8] The Settlement provides substantial relief to Class Members without delay, particularly in light of the above risks that Class Members would face in litigation.

### 6. Mr. Orr's Objection Should be Overruled because he is not a Class Member and because all Class Members are Treated Equitably because the TCPA does not Adjust Damages based on Anyone's Physical Condition.

Mr. Edward Orr filed an objection to the proposed settlement. *See* ECF No. 175. As a threshold matter of law, Mr. Orr is not a member of the settlement class and his objection should be overruled because he does not have standing. *See Root v. Ames Dep't Stores*, 989 F. Supp. 274, 275 (D. Mass. 1997) (overruling class action settlement objection holding that the objector

---

Plaintiff's counsel understands that during the COVID-19 Pandemic that the defendant has potentially sold their company or is no longer doing business. This is relevant for the settlement recovery because the Defendant is independently obligated to fund $100,000 of the $800,000 settlement. If they fail to do so, the Claimant's recovery will be $3,008.62. Exhibit 1 at ¶ 16.

[8] *See Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

is "is unaffected by the settlement."). Class Counsel agree with Mr. Orr that "the primary purpose of Rule 23(e) is to protect **class members**". ECF No. 175 at *9 (emphasis added). However, Mr. Orr is simply not a class member in this settlement and does not have standing to lodge an objection.

Mr. Orr's objection asserts that physically handicapped individuals suffer greater damages from these phone calls if they engage in call forwarding to multiple devices. *Id.* at *6. As a factual matter, the violation of the TCPA is not impacted by how many phones a recipient forwards the call to. In other words, the TCPA damages available to an individual for one call is the same as it is for one call that is also forwarded to multiple devices because the damages are statutory.

In *Edenborough v. Adt, LLC*, No. 16-cv-02233-JST, 2018 U.S. Dist. LEXIS 231896, at *4-5 (N.D. Cal. Mar. 29, 2018) comparable objections from Mr. Orr were overruled:

> As to the Orrs' first objection, the Court concludes that the settlement does not release potential claims based on the unfair targeting of, or special misrepresentations to, disabled persons…
>
> As to the Orrs' second, "main" objection, the Court concludes that the claimed difference between the rates paid by disabled and non-disabled customers does not destroy the fairness, adequacy, or reasonableness of the settlement because the evidence before the Court is insufficient to conclude that there was such a difference. [*5] In re Google Referrer Header Privacy Litig., 87 F. Supp. 3d at 1137. Even the Orrs concede that any rate difference between disabled and non-disabled customers is not "crystal clear." ECF No. 153 at 45. In fact, based on a review of the Orrs' contract, ECF No. 149, it appears that any higher price they paid was due to the greater services they elected, and not any rate differential based on their disabled status. ECF No. 153 at 26-27. Accordingly, the Orrs' objection to the settlement is overruled.

Similar here, the release does not release potential claims based on the unfair targeting of, or special misrepresentations to, disabled persons. Furthermore, the TCPA's damages are statutory of $500 to $1,500 per call. *See* 47 U.S.C. 227(b)(3). There is no adjustment of those amounts

based on if the call recipient was disabled, or not. As a result, there is no basis for Mr. Orr's position that individuals with disabilities should be afforded "greater protection" under the settlement, which here would mean higher damages. It should also be noted that Mr. Orr *was* a class member in the *ADT, LLC* matter, where here he is not.

Mr. Orr also questions if sufficient discovery was conducted in the case. However, as explained above, the parties *completed* discovery and a motion for class certification was pending when the settlement was reached.

### 7.  The Settlement is an Effective and Equitable Means of Distributing Relief to the Settlement Class.

The Settlement treats each class member in precisely the same way. *See* Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note (identifying, among potential "[m]atters of concern," whether "the scope of the release may affect class members in different ways that bear on the apportionment of relief"). Every class member who made a claim will receive the exact same relief, in return for the exact same release as to Defendant. No one was favored, disfavored, or otherwise treated differently from anyone else. Moreover, the overwhelmingly positive reaction of class members to the Settlement and its relief supports the fundamental equality and effectiveness of the Settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp.

894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

### D.    PLAINTIFF'S COUNSEL ARE ENTITLED TO AN AWARD FROM THE COMMON FUND ON A PERCENTAGE BASIS.

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (O'Toole, J.). Awards of reasonable attorneys' fees from a "common fund" provide compensation that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *Tyco*, 535 F. Supp. 2d at 265. In approving attorneys' fees in TCPA class actions courts hold that the percentage of the fund reflects the "market rate" because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14-1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund

method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

In TCPA cases, awards of one-third of the entire settlement fund are commonplace. *See Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

In this case, Class Counsel seek an award of attorneys' fees of $266,666.66 (one-third of the $800,000 common fund). Such an award reflects the market rate for such work and should be approved as fair and reasonable.

### E.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE LODESTAR METHOD

In the First Circuit, "[t]he lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required." *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (citation omitted); *accord Thirteen Appeals*, 56 F.3d at 307; *Lupron*, 2005 WL 2006833, at *3; *Relafen*, 231 F.R.D. at 81; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.122, at 193 (2004) ("the lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant. The total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases."). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable

attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'").

Here, Plaintiff's Counsel spent over 400 hours of attorney time prosecuting these claims. *See* <u>Exhibits 2-3</u>, Affidavits of Counsel. When the billable rates of Class Counsel are calculated considering the time spent on the file, the total lodestar of class counsel is $237,880, an amount consistent with the requested fee award. The rates requested are consistent with what this Court awarded Class Counsel in another TCPA class action. *See Hopkins v. Modernize, Inc.*, Civil Action No. 4:17-cv-40087 (D. MA) (Hillman, J.).

### F.    THE EXPENSES INCURRED BY CLASS COUNSEL WERE REASONABLE

In addition to an award of attorneys' fees, Class Counsel petition the Court to be reimbursed for litigation expenses incurred in the prosecution of the claims. These expenses are properly recoverable. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount, that were necessary to bring the action to a climax"); *Latorraca*, 834 F. Supp. 2d at 28 ("In addition to attorneys' fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during the litigation."). Here, the request of $32,000.01 in expenses were related to expert witness costs, mediation fees, deposition transcripts, electronic production processing, filing fees and service fees. *See* <u>Exhibit 2</u> at ¶ 10.

### G.    THE PLAINTIFF SHOULD RECIVE A SERVICE AWARD

Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to plaintiffs who instituted and prosecuted actions on the theory that there would be no class-wide benefit absent their suits.  These awards recognize the burdens assumed

by plaintiff litigants in instituting and prosecuting the actions, the time spent by plaintiffs on communicating with counsel and fulfilling class responsibilities of supervision, and the risks that plaintiffs bear in bringing the suit. For example, in *Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit Court of Appeals awarded the class representative $25,000 and recognized that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Id.* at 1016. *See also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("incentive awards are justified when necessary to induce individuals to become named representatives"). Incentive awards to class plaintiffs in TCPA cases are the norm. *See Benzion v. Vivint, Inc.*, No. 12- 61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) (approving $20,000 incentive award to named plaintiff in TCPA action); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 66) (awarding $20,000 incentive award to named plaintiff in TCPA action); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 86) (awarding named plaintiff a $25,000 incentive award in TCPA action); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (approving incentive awards of $30,000 each to two named plaintiffs in action); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) ($25,000 incentive award in TCPA action).

Mr. Davila-Lynch has served as an exemplary representative plaintiff in this case and should be fairly compensated for his efforts. At all times, Mr. Davila-Lynch was involved in the prosecution of this case. He spent a significant amount of time responding to discovery requests and compiling responsive documentation. He was also deposed. Mr. Davila-Lynch served the class well and should receive a $10,000 incentive award to recognize him for his time and effort spent on behalf of the class.

## H.    THE FORM AND MANNER OF NOTICE COMPLIED WITH RULE 23 AND DUE PROCESS

Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950*); In re Compact Disc Litig.*, 216 F.R.D. 197, 203-04 (D. Me. 2003) (notice satisfied Rule 23 because it provided sufficient information for class members to decide whether to file claims, opt out, seek exclusion or object); *Greenspun v. Bogan*, 492 F.2d 375, 382 (D. Mass. 1974) (essential purpose of notice is to apprise class members of settlement terms and class members' options). Sending notice by first class mail to class members identifiable by reasonable means is regularly deemed adequate under Rule 23(c)(2). *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56-57 (1st Cir. 2004).

In this case, direct mail notice was successfully delivered to over 91% class members of class members. *See* Exhibit 1 at ¶ 8-10. Moreover, KCC set up an administered a settlement website, which contained all relevant documents and notice forms to any class members who researched the website. *Id.* at ¶ 12. *See,, e.g.*, *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard directing class members to website). In sum, the notice program in this case far exceeds the minimum due process requirements.

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Manual for Complex Litigation, *supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

The Notice that was previously preliminarily approved by this Court and disseminated to the Settlement Class satisfies these criteria.  The Notice is clear, straightforward, and provides persons in the Settlement Class with enough  information to evaluate whether to participate in the Settlement.  The Notice Plan constituted the best notice practicable  under the circumstances, provided due and sufficient notice to the Settlement Class, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

## <u>CONCLUSION</u>

Plaintiff respectfully submits that the settlement in this matter is an excellent result for class members, and the response from class members suggests that they agree. A proposed Final Approval Order is attached as <u>Exhibit 4</u>.

Plaintiff,
By Counsel,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Dated: December 23, 2020


## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will automatically send notification to all

attorneys of record. Furthermore, a copy of this pleading has been provided to: Edward W. Orr,

122 Ridge Rd., Terryville, CT 06786 via FedEx.

*/s/ Anthony I. Paronich*
Anthony I. Paronich